```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

DIANA BELL,

          Plaintiff,                    03 CV 9945 (KMW)(HBP)

          -v-                           ORDER

PFIZER INC., PFIZER INC. STOCK AND
INCENTIVE PLAN, PFIZER EMPLOYEE
COMPENSATION AND MANAGEMENT
DEVELOPMENT COMMITTEE, PFIZER INC.
RETIREMENT ANNUITY PLAN, PFIZER INC.
RETIREMENT COMMITTEE,

          Defendants.

------------------------------------x
```

WOOD, U.S.D.J.:

        Plaintiff filed this action against defendants alleging,
<u>inter alia</u>, claims for breach of fiduciary duty under Section
502(a)(3) of the Employee Retirement Income Security Act
("ERISA"), 29 U.S.C. § 1132(a)(3), recovery of benefits under
ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and
promissory estoppel.  Plaintiff moved to compel the production of
sixteen documents – referred to as 1(a), 1(b), 2(a), 2(b), 2(j),
2(k), 2(l), 2(n), 3, 4, 5, 19, 20, 21, 22, and 24 in Defendants'
privilege log – withheld by defendants on the grounds of
attorney-client privilege and/or work-product protection.  On
July 1, 2005, Magistrate Judge Henry Pitman issued a Memorandum
Opinion and Order ("Order"), familiarity with which is assumed,

1

granting Plaintiff's motion to compel to the extent of ordering
Defendants to produce documents 1(a) and 1(b), but denying it in
all other respects.  Both parties have objected to parts of the
Order.

I. Standard of Review

"Matters concerning discovery generally are considered
'nondispositive' of the litigation."  Thomas E. Hoar, Inc. v.
Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).  Therefore, the
Court reviews those parts of the Order to which the parties have
objected to determine if they are "clearly erroneous or contrary
to law."  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a);
see also Abu-Nassar v. Elders Futures, Inc., No. 88 Civ. 7906,
1994 WL 445638, *4, 1994 U.S. Dist. LEXIS 11470, *12-*13
(S.D.N.Y. Aug. 17, 1994).  Under this standard, "a reviewing
court must ask whether, 'on the entire evidence,' it is 'left
with the definite and firm conviction that a mistake has been
committed.'"  Easley v. Cromartie, 532 U.S. 234, 242 (2001)
(quoting United States v. United States Gypsum Co., 333 U.S. 364,
395 (1948)).

"An objecting party may not raise new arguments that were
not made before the Magistrate Judge."  Robinson v. Keane, No. 92
Civ. 6090, 1999 WL 459811, *4, 1999 U.S. Dist. LEXIS 9766, *11

(S.D.N.Y. June 29, 1999).  <u>See also</u> <u>Rosello v. Barnhart</u>, No. 02
Civ. 4629, 2004 WL 2366177, *3, 2004 U.S. Dist. LEXIS 21076, *8-
*9 (S.D.N.Y. Oct. 20, 2004) (stating that plaintiff's objection
was untimely because plaintiff did not raise the claim before the
magistrate judge).


<u>II.  The Order's Findings and Conclusions</u>

The sixteen documents in issue have dates ranging from
August 18, 2003 through October 20, 2003; their subject matters
are summarily described in defendant Pfizer's privilege log, as
either "[s]tock options; retirement eligibility," "[s]tock plans;
PRAP[1] documents," [s]tock options; PRAP documents," or "[s]tock
plans; stock options, PRAP documents."  <u>See</u> Order at 3; Pfizer
Privilege Log, attached as Exhibit A to Declaration of Robert D.
Kraus in Support of Plaintiff's Motion to Compel, dated October
13, 2004 ("Kraus Decl. 2004"), which is itself attached as
Exhibit 2 to Declaration of Robert D. Kraus in Support of
Plaintiff's Objections to the Discovery Order of Magistrate
Judge, dated July 21, 2005 ("Kraus Decl. 2005").  Defendants
claimed that all sixteen documents are protected by the attorney-
client privilege, and nine are protected, as well, as attorney
work products.  <u>See</u> Order at 4; Pfizer Privilege Log, Kraus Decl.

---

[1] Pfizer Retirement Annuity Plan ("PRAP").

2004 Ex. A.  According to the Order, "[n]o information [was]
provided concerning the circumstances surrounding the preparation
of any of the challenged documents."  Order at 4.

The Order states that Plaintiff argued that Defendants'
claim of privilege should be rejected because: 1) Defendants
waived any privilege through their failure to serve an index of
withheld documents in a timely manner; 2) Defendants were
precluded from asserting the attorney-client privilege because of
the fiduciary exception to that privilege; and 3) Defendants did
not establish the work-product privilege.  Id.

As to the second argument concerning the fiduciary exception
to attorney-client privilege – which is the focus of both
parties' objections – Magistrate Judge Pitman rejected
Defendants' argument that the exception is inapplicable because
Plaintiff is asserting her claim under Pfizer's Stock and
Incentive Plan, which is not governed by ERISA and under which
Defendants are therefore not fiduciaries.  Magistrate Judge
Pitman found that, although it is true that Plaintiff's claim
involves the Stock and Incentive Plan, "the core issue in this
case is plaintiff's eligibility for retirement under the Pfizer
Retirement Annuity Plan," id. at 11, because Plaintiff's rights
under the Stock and Incentive Plan are dependent on whether or
not she was eligible to retire under the Retirement Annuity Plan,

4

id. at 8-13.  Magistrate Judge Pitman therefore concluded that
"to the extent that defendants argue that the fiduciary exception
does not apply because plaintiff is asserting a claim under a
non-ERISA stock option plan, their argument fails."  Id. at 13.
As to Defendants' argument that the fiduciary exception does not
apply to communications relating to litigation, potential
liability, or actions to protect the rest of the plan's
participants, Magistrate Judge Pitman found that: 1) the record
did not establish that the withheld documents related to
litigation, because the Pfizer Privilege Log's sparse
descriptions of the documents did not indicate this, and "none of
defendants' submissions in response to the pending motion
supplement[ed] the descriptions in the index," id. at 13-14; and
2) "defendants' arguments [that the fiduciary exception does not
apply to communications relating to potential liability or
actions to protect the rest of the plan's participants] come
close to swallowing the fiduciary exception whole" because, at
their most extreme, they "would shield almost all of a plan
administrator's communications with an attorney that relate to or
result in a denial of benefits," id. at 14-15.  At the same time,
Magistrate Judge Pitman recognized that "a trustee is obviously
entitled to counsel once an adversarial situation has arisen
questioning or challenging place decisions that have been made,"

id. at 15 (internal quotation marks omitted); he found that this
interest could be reconciled with a plan beneficiary's competing
interest "in disclosure of communications concerning plan
administration" by looking either to "the purpose for which legal
advice was sought" or "whether the communications occurred before
or after the decision to deny benefits," id. at 15-16.  Noting
the dearth of information provided by defendants as to the nature
of the communications at issue, Magistrate Judge Pitman found
that "the date of defendants' decision to deny plaintiff
retirement status must be deemed to be August 21, 2003, the date
of the telephone conversation allegedly memorialized in
defendants' letter dated August 22, 2003," and therefore
concluded that the withheld documents created before August 21,
2003 – namely, documents 1(a) and 1(b)[2] – "fall within the
fiduciary exception to the attorney-client privilege and must be
produced," but that the other documents need not be produced.
Id. at 17.[3]

_____

[2] Document 1(a) was created on August 18, 2003.  Document 1(b)
was created on an unknown date in August 2003, but Magistrate
Judge Pitman construed the ambiguity against Defendants after
noting that they bear the burden of proof when claiming the
attorney-client privilege.  Order at 17 n.6.

[3] Magistrate Judge Pitman also rejected Plaintiff's argument
concerning waiver of privilege, id. at 4-8, but agreed that
defendants failed to meet their burden of proof as to their claim
of work-product privilege; but, because no document was claimed
to be privileged solely on this basis, Magistrate Judge Pitman's

III. Plaintiff's Objections

Plaintiff objects to the Order's conclusion that none of the challenged documents apart from documents 1(a) and 1(b) must be produced.  Plaintiff's objection is based on the argument that "Pfizer failed to meet its burden to show that the attorney client privilege applies."  Plaintiff's Memorandum of Law in Support of Objections to Memorandum Opinion and Order of Magistrate Judge Dated July 1, 2005 ("Pl. Objections") 8.  This argument was not fully presented to the Magistrate Judge.  The Order states that, beyond asserting the fiduciary exception, "Plaintiff does not challenge the sufficiency of defendants' assertion of the attorney-client privilege in any other respect."  Order at 8.  Indeed, in her Memorandum of Law in Support of Plaintiff's Motion to Compel Pursuant to Fed. R. Civ. P. 37(a) ("Pl. Motion Mem."), Plaintiff argued: "Pfizer Cannot Invoke the Attorney Client Privilege on Matters of Plan Administration Under the Fiduciary Exception."  Pl. Motion Mem. Point I.  Although Plaintiff stated that "[t]he party seeking to invoke the privilege, in this case Pfizer, must establish the applicability of all elements of the attorney client privilege," and that "Pfizer's showing of these elements requires 'competent evidence and cannot be discharged by mere conclusory or ipse dixit

rejection of the work-product protection did not alter his conclusion as to which documents must be produced, id. at 17-18.

7

assertions,'" <u>id.</u> at 7 (quoting <u>Von Bulow v. Von Bulow</u>, 811 F.2d
136, 146 (2d Cir. 1987)), Plaintiff then went on to "[a]ssum[e]
for purposes of argument that Pfizer can introduce competent
evidence to show the existence of each element of the attorney
client privilege," <u>id.</u>,[4] rather than arguing that Defendants had
failed to establish these elements.[5]  In her reply submission,
however, Plaintiff argued that "[b]ecause it has failed to submit
any competent proof, Pfizer has plainly not met its burden of
proof required to show that the Communications are privileged or
that the fiduciary exception does not apply."  Plaintiff's
Memorandum of Law in Further Support of Plaintiff's Motion to
Compel Pursuant to Fed. R. Civ. 37(a) ("Pl. Motion Reply Mem.")
4.

In short, in her submissions to Magistrate Judge Pitman,
Plaintiff raised the issue of establishing the elements of the
attorney-client privilege, but did not elaborate upon this issue
by setting forth arguments as to how Defendants had not met those

---

[4] <u>See also</u> Defendants' Memorandum of Law in Opposition to
Plaintiff's Motion to Compel ("Defs. Motion Opp'n") 6 n.3
("Plaintiff does not seriously contest that Pfizer has met the
elements for invoking the attorney-client privilege, observing
only that it is Pfizer's burden to establish each of the
elements.") (citations omitted).

[5] Plaintiff also appeared to focus on the communications
involving Eileen Lacamera, who authored seven of the
communications that Plaintiff seeks to compel Defendants to
produce, and Jim Milano, a Pfizer attorney.  Pl. Motion Mem. 5-6.

requirements.  Thus, it is understandable that the Order does not address such an argument.  Nevertheless, the issue is not an entirely new one raised for the first time before the Court. Therefore, the Court will consider it.

Plaintiff argues that Magistrate Judge Pitman found that Defendants "had not met their burden to show that the Challenged Documents were privileged."  Pl. Objections (emphasis omitted). Magistrate Judge Pitman did not make this finding as such: as noted above, the Order does not address the question of whether Defendants have shown that the withheld documents are protected by the attorney-client privilege, because Plaintiff did not fully argue that they do not.  But the Order does repeatedly refer to the lack of information provided by Defendants concerning the withheld documents.  <u>See</u> Order at 14 n.4 (stating, as to Defendants' argument that the fiduciary exception does not apply to communications regarding litigation, that the party claiming the protection of a privilege bears the burden of establishing it and "the absence of evidence concerning the documents constitutes a failure of the defendants to meet their burden of proof"); <u>id.</u> at 4 ("No information has been provided concerning the circumstances surrounding the preparation of any of the challenged documents"); <u>id.</u> at 16 ("neither defendants' index nor their submissions in response to this motion suggest that the

communications were made to defend against plaintiff's claim nor
do they delineate when defendants determined that plaintiff's
separation from Pfizer was a termination and not a resignation");
id. at 18 (noting that Defendants have not sustained their burden
of proof as to their claim of work-product privilege because
"defendants have provided no evidence whatsoever concerning the
circumstances leading to the creation of the challenged
documents").

"The burden of establishing the existence of an
attorney-client privilege, in all of its elements, rests with the
party asserting it." United States v. International Broth. of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).  Such a burden "is
not, of course, discharged by mere conclusory or ipse dixit
assertions, for any such rule would foreclose meaningful inquiry
into the existence of the relationship, and any spurious claims
could never be exposed." von Bulow v. von Bulow, 811 F.2d 136,
146 (2d Cir. 1987) (internal quotation marks and citation
omitted).

> The broad outlines of the attorney-client
> privilege are clear: "(1) where legal advice
> of any kind is sought (2) from a professional
> legal advisor in his capacity as such, (3)
> the communications relating to that purpose,
> (4) made in confidence (5) by the client, (6)
> are at his instance permanently protected (7)
> from disclosure by himself or by the legal

10

> advisor, (8) except the protection be
> waived." <u>In re Grand Jury Subpoena Duces</u>
> <u>Tecum Dated September 15, 1983</u>, 731 F.2d
> 1032, 1036 (2d Cir.1984) (internal quotation
> marks omitted).

<u>International Broth. of Teamsters</u>, 119 F.3d at 214.  <u>See also</u>

<u>United States v. Construction Products Research, Inc.</u>, 73 F.3d

464, 473 (2d Cir. 1996) ("To invoke the attorney-client

privilege, a party must demonstrate that there was: (1) a

communication between client and counsel, which (2) was intended

to be and was in fact kept confidential, and (3) made for the

purpose of obtaining or providing legal advice.").  The attorney-

client privilege encompasses "both information provided to the

lawyer by the client and professional advice given by an attorney

that discloses such information."  <u>In re Six Grand Jury</u>

<u>Witnesses</u>, 979 F.2d 939, 944 (2d Cir. 1992) (citing <u>Upjohn Co. v.</u>

<u>United States</u>, 449 U.S. 383, 390 (1981)).  But "[t]he fact that a

document is sent or received between attorney and client does not

make it privileged unless it contains confidential communications

relating to legal advice."  <u>Grossman v. Schwarz</u>,  125 F.R.D. 376,

387 (S.D.N.Y. 1989); <u>see also</u> <u>In re Christensen</u>, No. M19-138,

2006 WL 278169, *1, 2006 U.S. Dist. LEXIS 11779, *2-*3 (S.D.N.Y.

Feb. 3, 2006) ("Communications between attorney and client not

privileged in their own right; instead, '[t]he document must

contain confidential communication relating to legal advice.'

11

<u>Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)</u>, 139 F.R.D. 295, 300 (S.D.N.Y. 1991).").  "To facilitate its determination of privilege, a court may require 'an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps.'"  <u>Construction Products Research, Inc.</u>, 73 F.3d at 473 (quoting <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)).  "The privilege log should: 'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure,'" with "'[o]ther required information . . . typically supplied by affidavit or deposition testimony.'"  <u>Construction Products Research, Inc.</u>, 73 F.3d at 473 (quoting <u>Bowne</u>, 150 F.R.D. at 474).  <u>See also</u> Fed. R. Civ. P. 26(b)(5) (requiring that party claiming that otherwise discoverable information is privileged "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection").

Defendants stated in their submissions to the Magistrate Judge, in passing, that they have met their burden of

12

establishing all the elements of the attorney-client privilege,
"as demonstrated by [Pfizer's] privilege log, extensive
correspondence and this opposition."  Def. Motion Opp'n 6 n.3.
And in their response to Plaintiff's objections, Defendants argue
that Magistrate Judge Pitman did not err in "recognizing the
existence of the attorney-client relationship between Ms.
Lacamera and Mr. Milano."  Defendants' Response to Plaintiff's
Objections to Memorandum Opinion and Order of Magistrate Judge
Dated July 1, 2005 ("Def. Resp.") 3.

     As the Order notes, however, the information concerning the
withheld communications is sparse.  The withheld documents are
communications involving the following authors and recipients, in
various combinations (as well as individuals "cc'ed" on the
communications): E. Lacamera, J. Gates, J. Milano, N. Weiss, J.
Benson, and G. Colon.  Pfizer Privilege Log, Kraus Decl. 2004 Ex.
A.  The privilege log does not provide the titles or roles of
these individuals.  However, the record indicates that, at the
relevant times, E. Lacamera was a Manager, Stock Option & Savings
Plan Administrator, see Kraus Decl. 2004 Ex. E, and J. Milano was
an attorney in the employment law group, see Kraus Decl. 2004 Ex.
J (58:17-21).  It appears undisputed that J. Gates was the
Director of Compensation Benefits.  See Pl. Motion Mem. 5.
Defendants claim, without evidentiary support, that N. Weiss and

13

J. Benson are "two Pfizer counsel."[6]  Def. Motion Opp'n 4 n.2.

Finally, the role or title of G. Colon does not appear to be set

forth in the record before the Court.  As for the context of the

withheld communications, they occurred, according to the

Privilege Log, between August 18, 2003, the date on which

Plaintiff called to inquire as to why her stock options had

expired (or were soon to expire) – or, in Plaintiff's

characterization, "why Pfizer had retroactively cancelled her

stock options," Pl. Motion Mem. 3[7] – and October 20, 2003, about

a month before this action was filed.  Defendant notes

specifically that Lacamera testified, in her deposition, that she

spoke with Milano after speaking with Plaintiff, and thereafter

communicated to Plaintiff Pfizer's position as to Plaintiff's

inquiry concerning her stock options.  Def. Resp. 4; Kraus Decl.

---

[6] It should be noted that for a few of the withheld
communications (2(n) (from Milano to Benson) and 22 and 24 (from
Milano to Weiss)), both the author and recipient appear to be
Pfizer counsel; however, Lacamera and Gates were "cc'ed" on these
communications.

[7] In her briefing below, Plaintiff stated - in the context of
arguing that the communications are subject to the fiduciary
exception even if they are protected by the attorney-client
privilege - that the communications "arose out of and followed on
the heels of [Plaintiff's] complaint, on August 18, 2003, that
she had received a document that was thoroughly at odds with
Pfizer's earlier written representations that she was eligible
for early retirement under the Retirement Plan and would receive
retiree eligible treatment of her stock options."  Pl. Motion
Mem. 9.

2004 J (58-60).  Defendants also point to Plaintiff's letter of
August 26, 2003, stating that Plaintiff would pursue litigation
if Pfizer did not resolve the dispute.  Def. Resp. 4 (citing
letter attached as Exhibit V to Declaration of Peter J. Engstrom
in Support of Defendants' Memorandum of Law in Opposition to
Plaintiff's Motion to Compel, dated October 19, 2004).[8]

    The Court is not satisfied that, on the record before it as
described above, Defendants have borne their burden of
establishing all of the elements of the attorney-client privilege
as to the withheld communications, apart from documents 1(a) and
(b).  As to documents 1(a) and (b), the information concerning
their author and recipient, and their context and general purpose
as described in the deposition testimony of Lacamera, establishes
that they are protected by the attorney-client privilege.
However, as to the other documents, the fact that their authors
and/or recipients appear to be attorneys and non-attorneys at
Pfizer, and the timing of these communications, are not
sufficient, without more, to establish that they were
confidential communications for the purpose of obtaining or

---

[8] Defendants claim that, in their August telephone calls with
Lacamera, Plaintiff and her husband were "threatening litigation
against Pfizer."  Def. Motion Opp'n 4.  But this claim is
unsupported; Defendants base it simply on the fact that Lacamera
wrote down "detrimental reliance" in her notes from the
conversation she had with Plaintiff and her husband.  Id.; Kraus
Decl. 2004 Ex. I.

giving legal advice.  Cf. Construction Products Research, Inc.,
73 F.3d at 473-74 (finding privilege log deficient because it
"contain[ed] a cursory description of each document, the date,
author, recipient, and 'comments,'" and concluding that it did
"not provide enough information to support the privilege claim,
particularly in the glaring absence of any supporting affidavits
or other documentation").  However, in light of the fact that, as
already discussed, Plaintiff did not fully present this argument
to Magistrate Judge Pitman, the Court will reserve decision as to
whether these communications are privileged pending its review of
further submissions.  The Court directs Defendants to produce, no
later than September 13, 2006, a more detailed privilege log,
along with affidavits setting forth facts supporting their claim
of attorney-client privilege – including the identities, titles,
and roles of the authors, recipients, and individuals cc'ed on
these communications, and the purpose of the communications.

     If, after a review of the additional submissions, the Court
finds that Defendants have met their burden of establishing that
all of the withheld communications are protected by the attorney-
client privilege, then Plaintiff's motion to compel will be
denied as to those documents, as directed by Magistrate Judge
Pitman, because Plaintiff does not object to Magistrate Judge
Pitman's conclusion that those documents do not fall under the

fiduciary exception to the attorney-client privilege.

    IV. Defendants' Objections

       Because the Court has found that documents 1(a) and (b) are
protected by the attorney-client privilege, the Court turns to
Defendants' objections to the Order's conclusion that Plaintiff's
motion to compel must be granted as to documents 1(a) and (b) -
handwritten notes by Lacamera of discussions she had with Milano
- on the basis of the fiduciary exception to attorney-client
privilege.  Defendants argue that: 1) the fiduciary exception to
the attorney-client privilege applies only to fiduciary matters,
and the communications between Lacamera and Milano were not
fiduciary in nature because a) Lacamera is not a fiduciary under
the Pfizer Retirement Annuity Plan – rather, only Pfizer's
Retirement Committee is charged with administering the Plan and
has fiduciary responsibility under ERISA, b) even if Lacamera
were a fiduciary, she did not act in the capacity of an ERISA
fiduciary when she spoke with Milano because she, at most,
investigated Plaintiff's claim regarding her stock options and
did not perform a discretionary task, c) the same holds for
Milano, and d) the subject of Plaintiff's claims, which Lacamera
looked into, were stock options, not retirement benefits.
Defendants' Objections to the Magistrate Judge's Memorandum

17

Opinion and Order Dated July 1, 2005 ("Def. Objections") 4-9.  In
addition, Defendants contend that, even if the fiduciary
exception were applicable here, it would not apply to these
specific communications between Lacamera and Milano because they
relate to litigation or potential liability.  Id. at 9-13.

It was not clearly erroneous or contrary to law for
Magistrate Judge Pitman to conclude that Defendants' argument
fails insofar as Defendants assert that the fiduciary exception
necessarily does not apply to the withheld communications because
Plaintiff's claim pertains to a non-ERISA stock option plan.  As
noted in the Order, and as recognized by Defendants, Plaintiff's
rights under the Stock and Incentive Plan are dependent on
whether or not she was eligible to retire under the Retirement
Annuity Plan, id. at 8-13, and documents 1(a) and (b) appear to
involve communications about the latter point.  Furthermore,
Defendants' specific arguments as to Lacamera's and Milano's
roles and functions (both generally and when they participated in
the withheld communications) – and their implied claim that only
communications involving the Retirement Committee would
potentially be subject to the fiduciary exception - were not
presented to the Magistrate Judge; thus, this Court need not
consider them.  Even if the Court were to consider these
arguments, however, they are moot, for the reason discussed

18

below.

The Court finds, however, the Order's conclusion that "the date of defendants' decision to deny plaintiff retirement status must be deemed to be August 21, 2003, the date of the telephone conversation allegedly memorialized in defendants' letter dated August 22, 2003," Order at 17, to be mistaken on the face of the entire record.[9]  It is certainly true that, as noted by the Order, the Defendants' index and submissions do not state when Defendants took the position that Plaintiff had not "retired" under the Pfizer Retirement Plan.  Order at 16.  But this determination by Defendants must presumably have taken place before Pfizer took the action, concerning Plaintiff's stock options, of which Plaintiff complained when she spoke to

---

[9] Defendants object to this specific finding in the Order only in a footnote in their submissions to this Court, see Def. Objections 12 n.4.  Their objection is focused, instead, on their argument that the communications in 1(a) and (b) pertained to litigation.  The Court does not find that Magistrate Judge Pitman erred in finding that the parties' submissions do not indicate that any of "the communications were made to defend against plaintiff's claim," Order at 16 – particularly documents 1(a) and 1(b), which were created before August 21, 2003.  As noted earlier, there is no evidence supporting Defendants'claim that, in their August telephone calls with Lacamera, Plaintiff and her husband were threatening litigation against Pfizer.  See supra note 8.  Plaintiff's two letters dated August 26, 2003, stating that Plaintiff would pursue litigation if Pfizer did not resolve the dispute, Def. Objections 11-12 (citing letters attached as Exhibits V and W to Declaration of Peter J. Engstrom in Support of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Compel, dated October 19, 2004 ("Engstrom Decl.")), are subsequent to the communications in documents 1(a) and (b).

Lacamera, and of which she was first notified on August 15, 2003,
see Letter from Diana Bell to Pfizer Inc., dated August 26, 2003,
Engstrom Decl. Ex. W.  Indeed, as has been discussed at length
both in Magistrate Judge Pitman's Order and this Order, it is on
this determination by Pfizer that the treatment of Plaintiff's
stock options hinges.  The August 21, 2003, conversation appears
to have been the first time Plaintiff was informed of this
determination, but not the date of the determination itself.
Therefore, under the approach taken by the Order, the fiduciary
exception does not extend to documents 1(a) and (b), insofar as
they pertain to communications that occurred after Pfizer's
determination that Plaintiff had not "retired."

### V. Conclusion

For the reasons set forth above, the Court concludes that
the Order clearly erred in concluding that documents 1(a) and (b)
must be produced.  The Order is therefore set aside insofar as it
grants Plaintiff's motion to compel to the extent of ordering
Defendants to produce documents 1(a) and 1(b).  As for the other
withheld documents at issue, the Court directs Defendants to
produce, no later than September 13, 2006, a more detailed
privilege log, along with affidavits setting forth facts
supporting their claim of attorney-client privilege – including

20

the identities, titles, and roles of the authors, recipients, and

individuals copied on these communications, and the purpose of

the communications.

    SO ORDERED.

Dated:    New York, New York
          August 31, 2006

                                    Kimba M. Wood

                                    Kimba M. Wood
                            United States District Judge