UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

DIANA BELL,

                    Plaintiff,

    -against-
                                        03 Civ. 9945 (KMW)

PFIZER INC., PFIZER INC. STOCK AND
INCENTIVE PLAN, PFIZER EMPLOYEE
COMPENSATION AND MANAGEMENT
DEVELOPMENT COMMITTEE, PFIZER INC.
RETIREMENT ANNUITY PLAN, PFIZER INC.
RETIREMENT COMMITTEE,

                                                ORDER
                    Defendants.

----------------------------------x

WOOD, D.J.:

    Defendants have requested a pre-motion conference in advance

of filing a summary judgment motion as to all of plaintiff's

remaining claims.[1]  In accordance with this Court's Order dated

January 31, 2005, the parties have filed statements, counter-

statements, and responses pursuant to Local Civil Rule 56.1 (the

"56.1 statements").  By Order dated January 11, 2006, the Court

directed Plaintiff to submit a letter: 1) stating which genuine

issues of material fact she thinks remain in dispute,

specifically citing the parties' 56.1 statements, and 2)

clarifying which terms of the Pfizer Retirement Annuity Plan, the

_____

    [1] The remaining claims are: ERISA promissory estoppel (first
claim); breach of fiduciary duty (second claim); recovery of
benefits under ERISA (third); declaratory judgment of the
parties' rights (eighth); and failure to disclose plan documents
(tenth).

                                1

Pfizer Inc. Stock and Incentive Plan, the Summary Plan Description, and other relevant documents, she alleges to be ambiguous, and in what manner those terms could, according to her, be reasonably understood, in light of her acknowledgment in several instances that she did not meet certain eligibility requirements.

        A. Facts as to Which There Appear To Be No Genuine Dispute

        In setting forth, in response to the Court's January 11 Order, what Plaintiff claims to be material facts in dispute, Plaintiff primarily relied, inexplicably, on Defendants' Counterstatement of Material Facts Pursuant to Local Civil Rule 56.1, dated May 19, 2004 ("Def. Counterstatement May 2004") – which was submitted at a time when Plaintiff intended to file a summary judgment motion[2] - rather than Defendants' Statement of Undisputed Material Facts, dated March 30, 2005 ("Def. Statement") - which was submitted in response to the Court's January 31, 2005, Order, after Defendants requested a pre-motion conference and indicated their intention to file a summary

_____

        [2] Plaintiff sought to file a motion for summary judgment in April 2004, as to her first and second claims for relief (i.e., ERISA common law promissory estoppel and breach of fiduciary duty).  At a pre-motion conference on May 28, 2004, the Court denied plaintiff's request to file the motion, because a fact finder would likely want to hear evidence from Plaintiff as to her reliance on correspondence from Defendants.  At that point, Defendants had not had the opportunity to depose plaintiff.

judgment motion.  The current proposed motion for summary judgment is based on Defendants' Statement of Undisputed Material Facts, dated March 30, 2005.  Several statements of fact that Plaintiff claims Defendants have made (citing to Def. Counterstatement May 2004) are not set forth in Defendants' Statement of Undisputed Material Facts, dated March 30, 2005. See Appendix A to Plaintiff's Letter to Court (Feb. 1, 2006) ("Pl. App. A") ¶¶ 3, 4, 8, 9, 12, 13, 15; Defendants' Response to Appendix "A", attached to Defendants' Letter to Court (Feb. 17, 2006) ("Def. Resp. App. A") ¶¶ 3, 4, 8, 9[3], 12, 13, 15.[4]  Thus, these alleged material disputes of fact are not genuine.[5]

Furthermore, several of the statements of fact that

---

[3] Regarding this alleged statement of fact – that "[t]here are no benefits made available by the Pfizer Retirement Annuity Plan which Plaintiff is seeking by this lawsuit" – Plaintiff argues that this is a legal claim rather than a fact issue.  Pl. App. A ¶ 9.  Defendants do not explicitly point out that this alleged statement is not set forth as such in their March 2005 56.1 Statement, but a review of the latter indicates that it is not.

[4] Another statement that is not set forth as such in Defendants' March 2005 Statement is, however, made, and expanded upon, in several equivalent paragraphs.  Compare Pl. App. A ¶ 14 with Def. Statement ¶¶ 82-86.  Therefore, it will be addressed infra.

[5] Regarding a few of these alleged statements of facts, Defendants contend that, although they are not set forth in their March 2005 Statement, they are in any event not genuinely in dispute.  See Def. Resp. App. A ¶¶ 3, 4, 8, 9, 15.  But the Court need not address whether or not there is in fact a genuine dispute as to statements of fact that are not made by Defendants in their current Rule 56.1 Statement.

Plaintiff claims are in dispute were admitted by Plaintiff in her Counter-Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated May 7, 2003 *[sic]*[6], and filed on April 22, 2005 ("Pl. Counterstatement"); moreover, any claimed disputes are not genuine or are not pertinent to material facts:

- Regarding Pl. App. A ¶ 2: Plaintiff has admitted the fact that Plaintiff "voluntarily terminated" her employment with Pfizer effect ive June 1, 2003 – although she has clarified that this does not mean that she thereby concedes that she did not "retire" under the Pfizer Retirement Annuity Plan, which is the mixed question of law and fact at the heart of this case. Def. Statement ¶ 3, Pl. Counterstatement ¶ 3.

- Regarding Pl. App. A ¶ 10: Plaintiff has admitted that in 1998 she acquired property in New Mexico.  Def. Statement ¶ 41, Pl. Counterstatement ¶ 41.  Plaintiff has also admitted that, in May 26, 2003, she listed her home address on an Electronic Deposit Authorization Form as being in New Mexico, Def. Statement ¶ 93, Pl. Counterstatement ¶ 93, and identified her home address on a tax form as being in New Mexico, Def. Statement ¶ 94, Pl. Counterstatement ¶ 94.  The exact date of her

---

[6] The Court assumes that the date of the document, May 7, 2003, is in error.

"relocation" to New Mexico is disputed: Defendants
claim it was as of May 26, 2003, while she claims that
it was as of July 1, 2003.  Pl. Counterstatement ¶ 196,
Def. Resp. Counterstatement ¶ 196.  But whether she
relocated in late May 2003 or over a month later is not
material.  Furthermore, her claim that she retained her
apartment in Riverdale after relocating to New Mexico,
Pl. App. A. ¶ 10, does not seem to be set forth in her
Counterstatement (which, rather, states only that she
retained her apartment in Riverdale after relocating
from New York to Connecticut in 1999, Pl.
Counterstatement ¶¶ 129-130); in any event, this fact
does not appear to be material.

- Regarding Pl. App. A ¶ 11: Plaintiff has admitted that
  "[b]y 2001, among Plaintiff's goals were to 'establish
  retirement target date,' develop a plan for termination
  with Pfizer at some point after 9/1/01 ('suggest
  6/1/02), and 'begin option exercise 5/1/02'").  Def.
  Statement ¶ 46, Pl. Counterstatement ¶ 46.  Plaintiff's
  claim of a dispute, in Pl. App. A. 11, is based on a
  mischaraterization of Defendant's contention, as being
  that "by 2001, Plaintiff had already decided to" do
  these things.

- Regarding Pl. App. A ¶ 14 (which corresponds to Def.

5

Statement ¶¶ 82-86, Pl. Counterstatement ¶¶ 82-86)[7]:
Plaintiff disputes Defendants' statements that the
"Stock Option Summary Sheet erroneously contained the
words 'retirement eligible' as the 'separation
reason,'" Def. Statement ¶ 85, Pl. Counterstatement ¶
85, and that the "Stock Option Summary Sheet did not
correctly reflect the treatment that was to be afforded
to Plaintiff's stock options in accordance with the
Pfizer Inc. Stock and Incentive Plan and in view of the
fact that Plaintiff was not eligible to retire under
the Pfizer Retirement Annuity Plan," Def. Statement ¶
86, Pl. Counterstatement ¶ 86.  She claims that she
"retired under the Retirement Plan and the Pfizer Stock
Plan reflected the resulting treatment of her stock
options in accordance therewith."  Pl. Counterstatement
¶ 86.  It is unclear, at this point, what constitutes
the basis of Plaintiff's claim, because the evidence
cited by Plaintiff in support has not been provided to
the Court.  Furthermore, Plaintiff has admitted that
she did not meet the stated criteria for eligibility
for Early Retirement under Section 4d of the Pfizer

---

[7] The issue in Pl. App. A ¶ 14 includes and overlaps with
the more specific factual issue set forth in Pl. App. A ¶ 28,
which is discussed separately infra; that discussion is
incorporated herein.

6

Retirement Annuity Plan, Normal Retirement under
Section 4a, or Late Retirement under Section 4b.  Def.
Statement ¶¶ 13-16, Pl. Counterstatement ¶¶ 13-16.
Plaintiff is therefore either claiming that her
eligibility for a benefit under Section 4k of the
Retirement Plan made her "retirement eligible" under
the Plan, or that she was somehow allowed to "retire"
under the Plan notwithstanding its stated criteria.  In
her Appendix A, Plaintiff appears to claim, rather,
that she was retirement eligible under an unspecified
other plan (separate from the Pfizer Retirement Plan),
formal or informal - the existence of which she
contends is evidenced by the fact that 103 Pfizer
employees were allowed to "retire" at less than 55
years of age between January 1, 2002 and December 31,
2003.  Pl. App. A ¶ 14; see also Pl. App. A ¶ 1,
discussed infra.  But this is different from claiming
that she was eligible to retire, when she left Pfizer
at age 51, under the Pfizer Retirement Annuity Plan
itself.  Thus, the basis for Plaintiff's claimed
dispute, at this point, is unclear.

- Regarding Pl. App. A ¶¶ 16, 31: Plaintiff has admitted
  that "Plaintiff was already assuming, long before she
  received the May 12, 2003 Stock Option Summary Sheet,

that her Pfizer stock options could be exercised by her after she 'retired' before reaching age 55."  Def. Statement ¶ 90, Pl. Counterstatement ¶ 90.  Plaintiff has added that she "still sought clarification about the treatment of her stock options upon retirement, as it was key to her retirement decision."  Pl. Counterstatement ¶ 90.  But this does not dispute the admitted fact.

- Regarding Pl. App. A ¶ 18: Plaintiff has admitted that "[i]n an e-mail message dated May 13, 2003, Plaintiff expressed her familiarity with the Summary Plan Description of the criteria for Early Retirement, namely, the Rule of 90 or age 55 plus 10 years of creditable service."  Def. Statement ¶ 20, Pl. Counterstatement ¶ 20. Plaintiff claims in her Counterstatement that she disputes this statement in part, "to the extent that the e-mail also confirms the existence of 'the older but still honored rule [of] the option to retire at age >59 *[sic]* with pre-93 pension." Pl. Counterstatement ¶ 20.  But this is not a genuine dispute.  The other statement in the e-mail does not change the admitted fact of what the email says regarding the Rule of 90 or age 55 plus 10 years of service.  And Defendants admit that the e-mail also

states: "However, we know that under the older, but
still time honored rule, there is the option to retire
at age ≥ 50 w/ receipts of pre-93 pension."  Pl.
Counterstatement ¶ 174, Def. Resp. Counterstatement ¶
174.

- Regarding Pl. App. A ¶ 23: Plaintiff has admitted that,
  in response to Plaintiff's request, in an e-mail with
  the subject line referring to "info on Pre-94 benefits
  with retirement at age 50," and inquiring in the body
  of the e-mail as to "information on what retirement
  pension benefits [she] would receive if [she] retired
  at age 50 (2002)," Pfizer provided Plaintiff with
  several written estimates of Plaintiff's vested pre-
  1994 benefit.  Def. Statement ¶ 35; Pl.
  Counterstatement ¶¶ 35, 136, 137; Def. Resp.
  Counterstatement ¶¶ 136, 137.  Plaintiff claims that
  this fact is disputed to the extent that Defendants
  contend that the estimates of her vested pre-1994
  benefits were provided "at Plaintiff's request":
  Plaintiff claims that she did not request such
  estimates but rather requested information concerning
  retirement benefits if she retired at age 50.  Pl. App.
  A ¶ 23, Def. Statement ¶ 35, Pl. Counterstatement ¶ 35.
  But if the "request" is more carefully characterized

(with reference to the subject heading and body of the
e-mail), there is no genuine dispute.

- Regarding Pl. App. A ¶ 24:  As to Plaintiff's claim
  that she disputes Defendants' statement that "Plaintiff
  elected to begin receiving her pre-1994 benefit under
  the Pfizer Retirement Annuity Plan upon her termination
  of employment with Pfizer and has been receiving
  monthly payments for the same," Def. Statement ¶ 36,
  Pl. Counterstatement ¶ 36, what Plaintiff disputes is
  not the fact that she elected to receive, and has been
  receiving, this benefit, see Pl. Counterstatement ¶ 36,
  Am. Compl. ¶¶ 3, 40.  Rather, she claims that this
  benefit is a "retirement benefit available upon her
  early retirement under the Pfizer Retirement Plan," Pl.
  Counterstatement ¶ 36.  This claim pertains to her
  contentions - further discussed infra - that certain
  Plan-related documents were ambiguous, and that she and
  other Pfizer employees, including administrators of the
  Plan, were confused on this point.

- Regarding Pl. App. A ¶ 25: Plaintiff has admitted that
  "[s]tock options are not a benefit provided by the
  Pfizer Retirement Annuity Plan".  Def. Statement ¶ 37,
  Pl. Counterstatement ¶ 37.  Plaintiff added the
  following caveat to her admission: "except to the

extent that defendants intend to imply that material rights and obligations of plaintiff regarding her stock options are not directly dependant on the Pfizer Retirement Pl an." Pl. Counterstatement ¶ 37. This caveat does not form the basis of a genuine dispute of the admitted fact.

- Regarding Pl. App. A ¶ 26: Plaintiff has admitted that "[r]etiree medical benefits are not a benefit provided by the Pfizer Retirement Annuity Plan." Def. Statement ¶ 38, Pl. Counterstatement ¶ 38. Plaintiff added the following caveat to her admission: "except to the extent that defendants intend to imply that material rights and obligations of plaintiff regarding her medical benefits are not directly dependant on the Pfizer Retirement Plan." Pl. Counterstatement ¶ 38. This caveat does not form the basis of a genuine dispute of the admitted fact.

- Regarding Pl. App. A ¶ 28: Plaintiff has admitted, "on the grounds that plaintiff lacks personal knowledge sufficient to dispute," that "Jacqueline Gomez did not know Plaintiff's age but incorrectly assumed that Plaintiff met the requirements for Retirement under the Pfizer Retirement Annuity Plan"). Def. Statement ¶ 84, Pl. Counterstatement ¶ 84. Plaintiff now claims to

11

dispute this fact, by pointing to statements regarding the actions of Peggy McGee, a retirement counselor, and to her interaction with Gomez.  Pl. App. A ¶ 28, Pl. Counterstatement ¶¶ 161-63, 166, 176.  But this does not form the basis for a dispute as to what Gomez knew and assumed, and whether that assumption was correct or incorrect.

- Regarding Pl. App. A ¶¶ 29, 30: Plaintiff has admitted that "Plaintiff's May 13, 2003 inquiry about the treatment of her stock options[8] . . . was sent after Pfizer had mailed her a Stock Options Summary Sheet on May 12, 2003; i.e., the latter was not sent in response[9] to the former."  Def. Statement ¶ 89, Pl. Counterstatement ¶ 89.

  Furthermore, Plaintiff's "dispute" of the statement by Defendants that she "did not receive any answers to her May 13, 2003 e-mail inquiry," Pl. App. A ¶ 29, Def.

---

[8] Defendants characterize the inquiry as about "the treatment of [Plaintiff's] stock options upon termination."  Def. Statement ¶ 89.  Plaintiff claims that the Stock Option Summary Sheet concerned the treatment of stock options on "retirement." Pl. Counterstatement ¶ 89.  The latter claim does not pertain to the characterization of Plaintiff's May 13 inquiry, but in any event there is no dispute that the inquiry concerned the treatment of Plaintiff's stock options upon her departure from Pfizer.

[9] Plaintiff's contention that the Stock Option Summary Sheet "may have [been] sent in response to early inquiries by plaintiff," Pl. Counterstatement ¶ 89, appears to be speculative.

Statement ¶ 88, Pl. Counterstatement ¶ 88, appears to
have no basis. Plaintiff claims that, subsequent to her
May 13 inquiry, she received the Stock Option Summary
Sheet, Pl. App. A ¶ 29, Def. Statement ¶ 88, Pl.
Counterstatement ¶ 88; but Plaintiff has admitted that
the Stock Option Summary Sheet was not sent in response
to the May 13 inquiry, Def. Statement ¶ 89, Pl.
Counterstatement ¶ 89.  Thus, Plaintiff appears to
claim that she viewed the Stock Option Summary Sheet as
having been sent in response to her May 13 inquiry, but
not that it was actually sent in response.
Furthermore, Plaintiff's contention that she "may also
have received [a]n oral response" to her May 13
inquiry, Pl. Counterstatement ¶ 88, is vague, and
appears to have been abandoned by Plaintiff, see Pl.
App. A. ¶ 29.


B.  Alleged Ambiguity of Pfizer Retirement Annuity Plan and
Other Documents

Several other statements of fact that Plaintiff claims are
in dispute concern what the Retirement Plan and other documents
state in connection with early retirement.  Plaintiff has
admitted what Defendants state these documents say, but Plaintiff
contends that the documents are ambiguous:

13

- Regarding Pl. App. A ¶ 5: Plaintiff has admitted that "the benefit available under section 4(k) is referred to as the 'pre-1994' benefit in the section itself." Def. Statement ¶ 27, Pl. Counterstatement ¶ 27.  Thus, this fact is not disputed.  Furthermore, Plaintiff's claim that section 4(k) refers to a Schedule "C"[10] to the Plan, which is entitled "Early Retirement Table" and sets forth computations beginning at age 50, see Pl. Counterstatement ¶ 27, see also id. ¶¶ 115, 116, is not disputed by Defendants, Def. Resp. Counterstatment ¶¶ 115, 116.  What is in dispute is the meaning and significance of Schedule C, and whether it creates ambiguity.  Pl. Counterstatement ¶¶ 27, 116; Def. Resp. Counterstatment ¶ 116.[11]

- Regarding Pl. App. A ¶¶ 6, 7, 21, 22: Plaintiff has admitted that she has "produced Pfizer Retirement Annuity Plan documents dating back as far as 1995 that

_____

[10] Plaintiff's Counterstatement states that section 4(k) refers to "Schedule 'E' of the plan."  Pl. Counterstatement ¶ 27. However, other statements in Plaintiff's Counterstatement, and in Plaintiff's Appendix A, indicate that this is a typographical error.

[11] Plaintiff's reference, in Pl. App. ¶ 5, to other documents, and to Plaintiff's and other Pfizer employees' alleged confusion as the "pre-1994 benefit," is not relevant to the question of whether there is a dispute as to Defendant's contention that "the benefit available under Section 4k of the Pfizer Retirement Annuity Plan is referred to in the Plan as the 'pre-1994' benefit," Def. Statement ¶ 27.

set forth the distinction between the pre-1994 benefit
(payment of which may commence as early as age 50) and
the post-1993 accrual (payment of which may commence
only at age 55)," Def. Statement ¶ 32, Pl.
Counterstatement ¶ 32, and that she "received numerous
documents from Pfizer before she terminated employment
with Pfizer in 2003 that set forth the distinction
between the pre-1994 benefit and other Pfizer
Retirement Annuity Plan benefits," Def. Statement ¶ 33,
Pl. Counterstatement ¶ 33.  These facts are therefore
not disputed.  Plaintiff claims, however, that although
the documents make this distinction, they are
ambiguous.  Pl. Counterstatement ¶¶ 32, 33.

- Regarding Pl. App. A ¶¶ 17, 20: Plaintiff has admitted
  that the Retirement Annuity Plan Summary Plan
  Description ("SPD") states that "eligibility for Early
  Retirement as provided for in the Pfizer Retirement
  Annuity Plan requires that the employee have reached
  age 55 while in Pfizer's employ and have 10 or more
  years of creditable service, or have achieved the 90
  combination (i.e., age plus years of creditable service
  adds up to 90 or more), as of the date of termination
  of employment." Def. Statement ¶ 17, Pl.
  Counterstatement ¶ 17.  Plaintiff has also admitted

15

that the July 2002 Pfizer Retirement Annuity Plan
Summary Plan Description (SPD) Booklet indicates that
"the pre-1994 benefit may be received as early as age
50." Def. Statement ¶ 29, Pl. Counterstatement ¶ 29.
These facts are therefore not disputed. Plaintiff
claims, however, that the SPD is ambiguous because it
"refers to the receipt of certain annuity benefits as
retirement benefits even though they are available at
age 50," and that there was confusion among Pfizer
employees on this point, Pl. Counterstatement ¶ 17; see
also Pl. Counterstatement ¶ 29 (disputing that the SPD
"confirms" that the pre-1994 benefit is different from
"Early Retirement Benefits" and claiming that the SPD
is ambiguous because it identifies the pre-1994 benefit
as a "retirement benefit").

- Regarding Pl. App. A ¶ 19: Plaintiff has already
  admitted that, from 2000 to 2003, she received numerous
  documents from Pfizer indicating an early retirement
  age of 55. Def. Statement ¶ 24, Pl. Counterstatement ¶
  24. This fact is therefore not disputed. Plaintiff
  claims, however, that the documents were ambiguous
  regarding Early Retirement. Pl. Counterstatement ¶ 24.

In her letter dated February 1, 2006, responding to the
Court's Order dated January 11, 2006, Plaintiff states in greater

16

detail how she believes the Retirement Plan and other documents are ambiguous: 1) Section 4k of the Retirement Plan, which allows employees who enjoyed vested plan benefits prior to 1994 to begin to receive that pre-1994 benefit at age 50, does not clarify that leaving Pfizer and electing to receive that benefit at age 50 was not equivalent to "early retirement"; 2) Schedule "C," to which section 4k refers, creates ambiguity because it is titled "Early Retirement Table" and begins at age 50; 3) the SPD repeatedly refers to the pre-1994 benefit as a "retirement benefit"; 4) a "retirement flyer" regarding a new "Retirement Counselor Position" suggests that Pfizer "PGP USP" employees (which Plaintiff was) who were age 50 or older could ask this new retirement counselor about their retirement questions. Plaintiff's Letter to Court (Feb. 1, 2006) 1-4.[12]  Defendants respond that the Plan and other documents to which Plaintiff points are not ambiguous, or -- in the case of the flyer -- are immaterial.  Defendant's Letter to Court (Feb. 17, 2006) 2-8.

Unambiguous plan language must be enforced under ERISA.  See Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001).  But, in the Second Circuit, a plaintiff can "get to a trier of fact based on ambiguous plan language."  Id. at 83.

_____

[12] It should be noted that Plaintiff appears to have abandoned her claim, see Pl. Counterstatement ¶¶ 18, 25, that sections other than section 4k in the Retirement Plan are ambiguous.

However, "[w]hether contract language is ambiguous is a question of law that is resolved by reference to the contract alone." Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002) (internal quotation marks and citation omitted) (concerning interpretation of ERISA plan). Thus, Plaintiff's claim that the Retirement Plan and other related documents are ambiguous does not form the basis of a factual dispute which would make a motion for summary judgment inappropriate.

C.  Facts Which Appear To Be Disputed But May or May Not Be Material

A few of the facts that Plaintiff claims are in dispute are, according to Defendants, not material. These facts are primarily related to the issues of Plaintiff's alleged reliance on certain documents and other statements made to her by Pfizer regarding her retirement eligibility.

- Regarding Pl. App. A ¶ 27: Plaintiff has admitted that she testified, at her deposition, that, as of May 9, 2003, she had "no doubt in [her] mind" that she could "retain her stock options upon retiring at the age of 50 or 51", Def. Statement ¶ 81, Pl. Counterstatement ¶ 81. Plaintiff contends, however, that other testimony in her deposition, as well as contemporaneous documents, suggest that she was not entirely "free of

18

doubt" as to this point, and that she sought further clarification from her retirement counselor.  Pl. Counterstatement ¶ 81.[13]  Because the parties have not submitted the supporting evidence for their 56.1 statements (including a transcript of Plaintiff's deposition and attached exhibits), the Court cannot evaluate whether there is a genuine inconsistency in sworn statements made by Plaintiff.  Defendants argue that, in any event, what Plaintiff "thought her benefits rights were, to the extent different than what is set forth in the written Plans, is not material."  Def. Resp. App. A. ¶ 27.

In addition, Plaintiff contends that statements made to her by Pfizer regarding her retirement eligibility "also bear[] significance on the reasonableness of Plaintiff's interpretation of the ambiguous Plan and other documents," Plaintiff's Letter to Court (Feb. 1, 2006) at 4, and she claims that other Pfizer employees, including employees involved with administering the Plan, were confused regarding early retirement before age 55 for employees who had vested plan benefits prior to 1994, id.  She concludes that, in light of all this, "Plaintiff reasonably

_____

[13] Similarly, although Plaintiff has admitted that, as of May 10, 2001, her understanding was that she could stop working at Pfizer before age 55 and retain her stock options, she disputes that her belief on this point was "certain."  Def. Statement ¶ 50, Pl. Counterstatement ¶ 50.

understood that she was eligible to retire under the Plan." Id. Defendants dispute Plaintiff's contention that Pfizer employees, including Pfizer staff responsible for administering the Retirement Plan, were confused regarding whether qualifying for the pre-1994 benefit was equivalent to becoming "retirement eligible" at age 50.  Pl. Counterstatement ¶ 121; Def. Resp. Counterstatement ¶ 121.  Furthermore, Defendants contend that Pfizer's alleged statements to Plaintiff, even if mistaken - as well as the alleged confusion of other employees - are immaterial: according to Defendants, Plaintiff could not reasonably rely on any informal or oral communications by Pfizer that were contrary to the unambiguous written terms of the formal Retirement Plan.  Thus, the issue of Plaintiff's beliefs and reliance is linked to the question of whether the Plan and other relevant documents are ambiguous.  This is therefore a question as to which legal briefing is necessary.

Finally, there appears to be a dispute concerning the treatment of 103 other Pfizer employees:

- Regarding Pl. App. A ¶ 1: Plaintiff has admitted that the "Pfizer Inc. Stock and Incentive Plan governing Plaintiff's stock options grants provides that the options shall terminate immediately upon cessation (or, for options granted after 1996, within three months of cessation) of employment for any reason, including

retirement, unless the optionee has retired or is eligible to retire under Sections 4a, 4b or 4d of the Pfizer Retirement Annuity Plan, in which case the option may be exercised until such option expires by its terms." Def. Statement ¶ 54, Pl. Counterstatement ¶ 54.

But Plaintiff claims that the Pfizer Inc. Stock and Incentive Plan "also provides for retirement eligibility for retirement not only under the Pfizer Retirement Plan but also under any pension or retirement plan maintained by the company or any of its subsidiaries." Pl. Counterstatement ¶ 54. And Plaintiff now claims that "Pfizer apparently maintained another retirement plan, formal or informal, as evidenced by the fact that it retired 103 of its 'legacy' employees [i.e., employees who had vested benefits before 1994] at less than 55 years of age, in the two year period between January 1, 2002 and December 31, 2003, even though these employees were not eligible to retire under sections 4a, b or d of the Retirement Plan." Pl. App. A ¶ 1. Alternatively, Plaintiff argues that "Pfizer Stock option plan administrators either reasonably assumed that there was such a plan or they made 103 'early retirement' errors,

in addition to erring with regard to Plaintiff's early
retirement."   Plaintiff's Letter to Court (Feb. 1,
2006) at 3.

Plaintiff's current claim regarding the existence of
another alleged retirement plan was not set forth, as
such, in Plaintiff's Counterstatement – which states,
rather, that "[f]rom January 1, 2002 through December
31, 2003, at least 103 employees who were less than 55
years of age retired under the 'Retirement Plan.'"   Pl.
Counterstatement ¶ 213 (emphasis added).   Defendants
dispute this latter statement, claiming that these 103
employees "all retired under a group separation program
pursuant to which 5 years were added to the age or the
years of service of each such employee for purposes of
eligibility for benefits under the Pfizer Retirement
Annuity Plan."   Def. Resp. Counterstatement ¶ 213.
Plaintiff has not responded to Defendants' explanation
of how and why these 103 employees were allowed to
"retire" under the Retirement Plan.   At this point,
Plaintiff has not pointed to any other evidence
supporting her current claim that the fact that these
103 employees were allowed to "retire" indicates that
there existed another plan, beyond the Pfizer
Retirement Plan, allowing employees to "retire" as of

age 50.  But even assuming that there is a genuine a
dispute as to whether or how these 103 other employees
were allowed to "retire," Defendants argue that what
happened to those employees is "immaterial and does not
change the language or meaning of the Stock and
Incentive Plan or the Pfizer Retirement Annuity Plan,"
and that "Plaintiff's claims for benefits are governed
by the written plan terms applicable to <u>her</u>, not by any
severance benefits granted to anyone else."  Def. Resp.
App. A ¶ 1; <u>see also</u> Defendant's Letter to Court (Feb.
17, 2006) 6-7.

Again, as to this point, even if there is a genuine factual
dispute, legal briefing is required to determine if the issue is
material.


In light of the above, the Court will permit Defendants to
submit a motion for summary judgment.  Plaintiff argued that the
Court should review Magistrate Judge Pitman's Memorandum Opinion
and Order, dated July 7, 2005, before any summary judgment motion
is filed.  This Court has issued an Order, simultaneously with
this Order, addressing the parties' objections to Magistrate
Judge Pitman's Memorandum Opinion and Order; in that Order, the
Court asks for further submissions by September 13, 2006.
Although it is not clear that the discovery sought would be

material, this briefing schedule for the summary judgment motion allows for a final resolution as to the discovery dispute before a summary judgment motion is filed.  Defendants shall submit any motion for summary judgment by September 22, 2006; Plaintiff shall file any opposition papers to the motion by October 6, 2006; Defendants shall file any reply by October 13, 2006.

The Court, of course, reserves judgment as to whether Defendants is indeed entitled to summary judgment; the Court will make that determination after carefully considering the parties' submissions.

SO ORDERED.

DATED:    New York, New York
          August 3l, 2006

                                    KIMBA M. WOOD
                                    United States District Judge

24