```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      |
DIANA BELL,                           |
                                      |
               Plaintiff,             |
                                      |   03 Civ. 9945 (KMW)
     -against-                        |
                                      |   OPINION AND ORDER
PFIZER INC., PFIZER INC. STOCK AND    |
INCENTIVE PLAN, PFIZER EMPLOYEE       |
COMPENSATION AND MANAGEMENT           |
DEVELOPMENT COMMITTEE, PFIZER INC.    |
RETIREMENT ANNUITY PLAN, and          |
PFIZER INC. RETIREMENT COMMITTEE,     |
                                      |
               Defendants.            |
                                      |
--------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

By the end of her twenty-three-year career at Pfizer, Inc. ("Pfizer"), Plaintiff Diana Bell had amassed several million dollars' worth of stock options. She terminated her service with Pfizer on June 1, 2003, at age 51, believing that she had taken early retirement and had retained her stock options. Soon thereafter, Pfizer notified her that because she had not attained the early retirement age of 55, she had not retired (but had instead resigned), and she was required to forfeit some options and exercise others immediately.

Bell alleges that the documents describing Pfizer's retirement plan were ambiguous with respect to her retirement eligibility, and that Pfizer officials either confirmed or gave her the false impression that she would be permitted to retire

1

with options intact.  She brings this action against Defendants Pfizer, Pfizer Inc. Stock and Incentive Plan, Pfizer Employee Compensation and Management Development Committee, Pfizer Inc. Retirement Annuity Plan, and Pfizer Inc. Retirement Committee (collectively, "Defendants"), alleging various claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461: promissory estoppel, breach of fiduciary duty, denial of benefits due, and failure to comply with requests for information.  She also seeks a declaratory judgment that she was retirement eligible.[1]

Defendants have moved for summary judgment on all claims.  For the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

**I.    Pfizer's Pension Program**

Pfizer's employee pension plan is called the Pfizer Retirement Annuity Plan, or PRAP.  (Defs.' Rule 56.1 Statement ¶ 5; see also Kraus Decl., Ex. A [hereinafter "PRAP"].)  Under the terms of the PRAP, "retirement" is defined to include three situations: (1) "normal retirement," at age 65; (2) "late retirement," after age 65; or (3) "early retirement," after

---

[1] The fourth, fifth, sixth, seventh, and ninth claims in the Amended Complaint, sounding in New York and Connecticut state law, have been withdrawn.

either (a) age 55 plus ten years of service, or (b) an employee's age plus years of service equals 90 or more.  (PRAP 8-9, 17-20.)  Only an employee who retires in one of these three circumstances (or one who dies or becomes disabled) may retain stock options after leaving work at Pfizer.  (Engstrom Aff., Ex. A [hereinafter "Bell Dep."], Ex. 3, § 6(g).)

Pfizer also permits employees who earned a portion of their pension benefits prior to January 1, 1994 to elect to receive that portion any time after age 50.  (PRAP 39-41.)  The PRAP does not define accrual of pre-1994 benefits as "retirement."  (Id. 39.)

In addition to the formal PRAP, Pfizer publishes a summary plan description, or SPD.  (See Kraus Decl., Ex. B [hereinafter "SPD"].)  The SPD defines normal, late, and early retirement, and the benefits associated with each status, in plain language and with concrete examples.  (Id. 17-23.)  The SPD also describes the pre-1994 benefits, and notes that an employee may receive pre-1994 benefits "even if you have not attained eligibility for Early Retirement."  (Id. 25.)

## II.  Facts Specific to Plaintiff's Case

Diana Bell was born on January 18, 1952.  (Defs.' Rule 56.1 Statement ¶ 1.)  She began work at Pfizer in 1980.  (Id. ¶ 2.)

Bell began to contemplate retirement in 2001.  (Pl.'s Rule

56.1 Statement ¶ 133.)  She decided to leave the company on July 19, 2002 (id. ¶ 144), but postponed her plans after Pfizer announced the acquisition of Pharmacia-Upjohn (id. ¶ 152).  Bell ultimately left the company effective June 1, 2003, at age 51.  (Defs.' Rule 56.1 Statement ¶¶ 3-4.)

Bell has submitted evidence of various communications she had with Pfizer officials on the subject of retirement and, specifically, about whether she would retain her stock options. Those communications included the following:

(1) On May 10, 2001, Bell e-mailed Jacqueline Gomez, a Pfizer stock option analyst, to inquire whether she would retain her stock options "if I retire under the Pfizer Retirement Annuity Plan."  (Bell Dep., Ex. 37.)  Gomez confirmed that she would.  (Id.)

(2) Bell wrote several e-mails and letters to her supervisor and to Pfizer human resources officials that described her intention to "retire" earlier than age 55.  (Id., Exs. 39, 43, 52, 65.)  There is no evidence that any of those officials told her that she could not retire under the PRAP before age 55.

(3) On May 6, 2003, Pfizer retirement counselor Peggy McGee wrote Bell a letter describing her as "an employee who is eligible to retire under the Plan."  (Id., Ex. 68.)

(4) On May 12, 2003, Bell received a stock option summary sheet from Gomez, which listed her outstanding options and

4

categorized her as "Retirement Eligible."  (Id., Ex. 70.)  The summary sheet stated that 32 of the 34 options would be exercisable for the life of the grant.  (Id.)

(5) On May 13, 2003, Bell e-mailed McGee the following query:

> Many of the documents that I have state that retirement is defined by the "rule of 90" or by age ≥ 55 + 15 years of credible service.  However, we know that under the older, but still honored rule, there is the option to retire at age ≥ 50 w/receipt of pre-93 pension.  I hope I'm correct that this applies to retention of previously granted stock options.  Can you please confirm this as this is key to my decision to retire.

(Id., Ex. 72.)  There is no evidence that McGee replied.

Bell left her job on June 1, 2003.  (Pl.'s Rule 56.1 Statement ¶ 192.)  On August 15, 2003, she received a stock option status report from Pfizer, which showed that several of her options had been canceled and the remainder would expire in two weeks.  (Bell Dep., Ex. 82.)  She called Pfizer's human resources department to object.  (Pl.'s Rule 56.1 Statement ¶ 203.)  By letter dated August 22, 2003, Pfizer informed Bell that her departure from the company was not a "retirement" but a termination."  (Bell Dep., Ex. 85.)

**LEGAL STANDARD**

Defendants should be awarded summary judgment only if there is no genuine issue as to any material fact and they are entitled

to judgment as a matter of law.  Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).  A genuine issue of material fact exists if the evidence, viewed in the light most favorable to Plaintiff, could allow a reasonable jury to return a verdict in her favor.  Id.  All inferences must be drawn in Plaintiff's favor, although speculation and conjecture are insufficient to preclude summary judgment.  Id.

**DISCUSSION**

**I.    Promissory Estoppel**

A claim of promissory estoppel in an ERISA case has five elements: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, (4) injustice if the promise is not enforced, and (5) "extraordinary circumstances."  Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999).  The fifth requirement was imposed "to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans."  Id.  The Second Circuit has found extraordinary circumstances only in cases where an employer reneged on a promise made with the intention of inducing employees to take actions benefitting the employer, such as joining the company or accepting early retirement.  See Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90, 101

(2d Cir. 2001); Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 86-87 (2d Cir. 2001); Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 80 (2d Cir. 1996); see also Devlin v. Transp. Commc'ns Int'l Union, 173 F.3d 94, 102 (2d Cir. 1999) ("[T]he remarkable consideration in Schonholz was the defendants' use of promised severance benefits as an inducement to persuade Schonholz to retire."). But see Devlin v. Empire, 274 F.3d at 86 (reserving question of whether extraordinary circumstances other than intentional inducement would suffice). By contrast, a promise does not, by itself, rise to the level of extraordinary circumstances simply because an employee relies on it. Devlin v. Transp. Commc'ns, 173 F.3d at 102.

Defendants are entitled to summary judgment on the promissory estoppel count because Plaintiff has adduced no facts that could support a finding of extraordinary circumstances. She has not alleged that Pfizer intentionally promised her early retirement benefits to induce her to leave the company. At most, she has provided evidence that mailings from Pfizer stated that she was retirement eligible, that several Pfizer employees failed to correct those misstatements, and that she left Pfizer in reliance on those statements or promises. But the Second Circuit has held that such a scenario is not extraordinary: "Admittedly, there is evidence in this record to support the notion that some employees . . . considered the promised medical benefits in

7

timing their retirements.  But reliance is one of the four basic elements of promissory estoppel, and would not by itself render this case 'extraordinary.'"  Id.

Plaintiff argues that reckless or grossly negligent misrepresentations by Pfizer would qualify as an extraordinary circumstance.  The lone decision she cites in support of this view, DePace v. Matsushita Electric Corp. of America, No. 02-CV-4312 ERK VVP, 2004 WL 1588312 (E.D.N.Y. July 16, 2004), is not persuasive.  DePace appears to misread Devlin v. Empire and Schonholz, taking the latter decision's description of the promise element as a formulation of the extraordinary circumstances element.  Compare DePace, 2004 WL 1588312, at *12, with Schonholz, 87 F.3d at 79.  Reliance, even reasonably foreseeable reliance, is not enough: to qualify as an extraordinary circumstance under Second Circuit precedent, Pfizer must have misrepresented Plaintiff's eligibility to receive retiree stock option benefits for the purpose of inducing her to retire.  Because she has provided no evidence Pfizer did so, the Court grants summary judgment on the promissory estoppel claim.

## II.  Breach of Fiduciary Duty

Plaintiff's second claim alleges that Defendants made misrepresentations to Plaintiff, breaching their fiduciary duties

under ERISA Section 404(a)(1).[2]  Plaintiff seeks equitable relief for the alleged breach.  See 29 U.S.C. § 1132(a)(3).

To establish a breach of fiduciary duty based on alleged misrepresentations about coverage under an ERISA plan, Plaintiff must show that (1) Defendants were acting in a fiduciary capacity and that (2) they made a material misrepresentation or omission (3) on which Plaintiff relied to her detriment.  See McMunn v. Pirelli Tire, LLC, 161 F. Supp. 2d 97, 120 (D. Conn. 2001); accord Estate of Dermady v. Eastman Kodak Co., 136 F. Supp. 2d 181, 189 (W.D.N.Y. 2001).  Because Plaintiff has established the first element, and because genuine issues of material fact exist with respect to the second and third elements, summary judgment on the breach of fiduciary duty claim is denied.

---

[2] Section 404(a)(1) states, in relevant part:
[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
    (A) for the exclusive purpose of:
    (i) providing benefits to participants and their beneficiaries . . . ;
    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; [and]
        . . .
    (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
29 U.S.C. § 1104(a)(1).

**A.   Fiduciary Capacity**

Pfizer acted in a fiduciary capacity in making statements to Plaintiff about her eligibility or ineligibility for early retirement under the PRAP, and in answering her questions on the same subject.  An entity is a fiduciary with respect to an ERISA plan "to the extent" that, among other things, it "has any discretionary authority or discretionary responsibility in the administration" of the plan.  29 U.S.C. § 1002(21)(A).  The Supreme Court has held that an employer engages in plan administration, and therefore acts as a fiduciary, when it "answer[s] beneficiaries' questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits."  Varity Corp. v. Howe, 516 U.S. 489, 502-03 (1996); accord Flanigan v. Gen. Elec. Co., 242 F.3d 78, 84 (2d Cir. 2001).  Here, Plaintiff's breach of fiduciary duty claim is based on Pfizer officials' actions in responding to her questions about retirement.

**B.   Material Misrepresentation**

A genuine issue of material fact exists with respect to whether Pfizer made material misrepresentations to Plaintiff about her eligibility to retire and retain her stock options.

Contrary to Pfizer's assertions, an employer's conduct need not rise to the level of knowing misrepresentation or lies in

10

order to constitute a breach of its fiduciary duties under ERISA. Rather, as the Second Circuit has held, fiduciary duties can also be breached by material omissions, see Devlin v. Empire, 274 F.3d at 88 (noting that breach occurs when plan administrator "fails to provide information when it knows that its failure to do so might cause harm" (internal quotation marks omitted)), and by negligent material misrepresentations, see Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 10 (2d Cir. 1997).[3]  The Becker court held that the defendant corporation breached its fiduciary duty to an employee contemplating retirement, based in part on unintentionally misleading information that one of the corporation's benefits counselors gave the employee.  Becker, 120 F.3d at 10.  The court stated that employers have a duty to give employees "complete and accurate information about [their] retirement options."  Id.

Here, Plaintiff has submitted evidence of both omissions and negligent misrepresentations by Pfizer.  She has submitted evidence that, in response to her inquiries, various Pfizer employees failed to inform her that she was not eligible to "retire" and that she would not retain her options.  She has also submitted evidence that, before her departure from Pfizer, the company sent her written materials stating that she was eligible

---

[3] Another circuit has noted that "[t]he Second Circuit . . . has given the broadest scope to ERISA fiduciary duty claims." Vallone v. CNA Fin. Corp., 375 F.3d 623, 640 (7th Cir. 2004).

to "retire" under the terms of the PRAP and to retain her stock options after "retirement."  A reasonable jury could conclude that these actions constituted omissions or misrepresentations that violated Pfizer's duty to deal "fairly and honestly" with its beneficiary-employees.  Ballone v. Eastman Kodak Co., 109 F.3d 117, 124 (2d Cir. 1997).

A misrepresentation or omission is "material" if there is a substantial likelihood it "would mislead a reasonable employee in making an adequately informed decision about if and when to retire."  Caputo v. Pfizer, Inc., 267 F.3d 181, 192 (2d Cir. 2001) (internal quotation marks omitted).  A jury that accepted the evidence cited above could reasonably decide that Pfizer's acts and omissions were material to Plaintiff's decision to leave the company.

## C. Detrimental Reliance

Plaintiff asserts that she relied on Pfizer's representations and omissions in electing to leave the company in 2003.  (Pl.'s Rule 56.1 Statement ¶¶ 173, 187.)  She alleges this reliance was to her detriment, because it cost her millions of dollars' worth of stock options.  A genuine issue of material fact therefore exists with respect to whether Plaintiff relied to her detriment on Pfizer's statements and omissions.

### III. **Recovery of Benefits**

A participant in or beneficiary of an ERISA plan may bring suit under ERISA Section 502(a)(1)(B) to "recover benefits due to [her] under the terms of [her] plan" or to "enforce [her] rights under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that the PRAP, taken together with the summary plan description, allowed her to retire in 2003 with her stock options intact.  Defendants are entitled to summary judgment on this claim.

A claim under ERISA Section 502(a)(1)(B), "in essence, is the assertion of a contractual right under a benefit plan." Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999), abrogated on other grounds by Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002).  The terms of the plan are set out in two documents: the plan itself (the PRAP) and the summary plan description (the SPD).[4]  See Moore v. Metro. Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988).  To survive a motion for summary judgment, a plaintiff need not show that the terms of the plan unambiguously entitle her to recovery; instead, the Second Circuit "permits a plaintiff to get to a trier of fact based on

---

[4] Employers are required by law to furnish SPDs to plan participants.  29 U.S.C. § 1022.  ERISA contemplates that the SPD "will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained" in the SPD.  Heidgerd v. Olin Corp., 906 F.2d 903, 907 (2d Cir. 1990).  Thus, where there is a variance between the terms of the plan and those of the SPD, the latter control.  Id. at 908.

ambiguous plan language," that is, "language capable of reasonably being interpreted as creating a promise on the part of [the employer]."  Devlin v. Empire, 274 F.3d at 83 (alteration in original) (emphasis and internal quotation marks omitted). Whether plan language is ambiguous is a question of law for the Court, which must consider the plan documents as a whole.  Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002).

Taken as a whole, the plan documents unambiguously state that only employees age 55 or older may "retire" with stock options intact.[5]  The PRAP defines "retirement" as the termination of service with Pfizer "after meeting the requirements of Sections 4a, b, or d, respectively."  (PRAP 9.) Sections 4a and 4b deal with "normal retirement" (age 65) and "late retirement" (after age 65), which are not relevant here. Section 4d, concerning "early retirement," states that "[a]ny Member may Retire before [age 65] provided (i) he has reached age 55 and has 10 years or more of Creditable Service; or (ii) his attained age when added to his years of Creditable Service equals or exceeds 90."[6]  (Id. 19.)  The SPD defines early retirement the

---

[5] Pfizer spelled out the rules for stock options in its Stock and Incentive Plan.  (Bell Dep., Ex. 3.)  The Stock and Incentive Plan provides that stock options terminate when the optionee ceases to work for Pfizer for any reason, except for death, disability, or "retirement under Sections 4a., b. or d. of the Company's Retirement Annuity Plan."  (Id. § 6(g).)

[6] When Plaintiff left Pfizer she was 51 years old and had 23 years of service with the company.  (Defs.' Rule 56.1 Statement ¶¶ 2-4.)

same way: "If you reach age 55 while in Pfizer's employ and have 10 or more years of Creditable Service, or you achieve the '90 combination' as of your termination of employment (i.e., your age plus Creditable Service adds up to 90 or more), you may retire early."  (SPD 19.)

In addition to granting conventional retirement benefits, Pfizer permits plan members who accrued part of their vested retirement benefits before January 1, 1994 to receive the pre-1994 portion of their benefits as early as age 50.[7]  The section of the PRAP governing the pre-1994 benefit, Section 4k, is entitled "Special Rules For Certain Members Who Are Not Eligible To Retire Under Sections 4a or 4d."  (PRAP 39.)  It unambiguously states that it applies to members who were "terminated" rather than those who "retired."  (Id.)

Plaintiff argues that two sections of the plan documents are ambiguous: (1) Schedule C of the PRAP, entitled "Early Retirement Table," and (2) the portion of the SPD discussing the pre-1994 benefit.  However, neither section can reasonably be interpreted as containing a promise by Pfizer that Plaintiff could "retire" at age 51.  See Devlin v. Empire, 274 F.3d at 83.

First, Plaintiff claims that Schedule C of the PRAP is ambiguous because it includes figures related to employees ages

---

[7] Pfizer permitted outright early retirement at age 50 until January 1, 1994; after that date, the "pre-1994 benefit" provision was added as a grandfather clause.  (See Defs.' Mem. of Law 6 n.6.)

15

50 to 54 in a table entitled "Early Retirement Table."  (PRAP 78.)  The table lists percentages by which benefits are reduced upon election of early retirement or of pre-1994 benefits at given ages; the younger a member is when she retires, the more heavily discounted are her benefits.  Schedule C is cross-referenced both in Section 4d (early retirement) and in Section 4k (pre-1994 benefits), and it lists ages applicable to both conditions: ages 50 to 54 for pre-1994 benefits, ages 55 to 65 for early retirement.  Plaintiff argues that the inclusion of ages 50 to 54 in an "Early Retirement Table," by itself, can reasonably be interpreted as a promise that members may retire between ages 50 and 54.  But no reasonable employee would ignore the entire PRAP and assume that a list of numbers in an appendix, without definitions, analysis, or context, constituted a promise that she could retire at a particular age.  See Aramony v. United Way of Am., 254 F.3d 403, 412 (2d Cir. 2001) (directing courts to interpret ERISA plan language in "the context of the entire integrated agreement" (internal quotation marks omitted)).  Taken as a whole, see Fay, 287 F.3d at 104, the PRAP unambiguously restricts early retirement to those employees who are 55 or older or who have attained the "90 combination."[8]

---

[8] Plaintiff also argues that the Court should credit the supposed ambiguity of Schedule C, and not look to the remainder of the PRAP, because the PRAP contains "technical jargon" in violation of guidelines set out in the Code of Federal Regulations.  (See Pl.'s Mem. of Law 22.)  However, the CFR guidelines cited by Plaintiff apply to summary plan descriptions, not to formal plan documents.  29 C.F.R.

Second, Plaintiff argues that the section of the SPD discussing the pre-1994 benefit suggests that employees may take early retirement at age 50.  That section, entitled "If You Earned a Benefit Before 1994," states:

> If you earned a portion of your retirement benefit under the Pfizer Retirement Annuity Plan before January 1, 1994, you may begin receiving this portion of your benefit as early as age 50, provided you have at least five years of Creditable Service at the time you leave Pfizer.  However, this portion of your benefit will only be reduced by four percent for each year before age 65 that benefit payments begin, <u>even if you have not attained eligibility for Early Retirement.</u>

(SPD 25 (emphasis added).)  The underlined phrase unambiguously shows that receipt of the pre-1994 benefit is distinct from early retirement.[9]  The use of the phrase "retirement benefit" in this

---

§ 2520.102-2(a).  The PRAP is necessarily complex, but it is not misleading or ambiguous.

[9] The immediately preceding section, entitled "If You Leave Pfizer Before Your Retirement -- Vested Retirement," lends additional context to the quoted statement.  This section states, "If your employment with Pfizer and its affiliates ends before you are eligible for Early, Normal, or Late Retirement, you will be eligible for a benefit under the Plan if you are vested when your employment ends." (SPD 23.)  The concept of vested retirement, which directly precedes the concept of the pre-1994 benefit in the SPD, underscores the notion that employees may be eligible for certain plan benefits even if they are ineligible for full retirement.
   The section on vested retirement also states that if a former employee elects to receive vested retirement benefits before age 65, "your benefit will generally be reduced by six percent . . . for each year before age 65 that benefit payments begin." (<u>Id.</u> 24.)  On the following page, the SPD states that pre-1994 benefits "will only be reduced by four percent for each year before age 65 that benefits begin, even if you have not attained eligibility for Early Retirement."  (<u>Id.</u> 25.)  The second statement relates back to the first: although ordinary vested benefits are reduced by six percent per year, pre-1994 benefits are reduced by only four percent.  These two statements emphasize that the pre-1994 benefit is a species of vested benefit that is independent from eligibility for normal, late,

17

passage is not by itself a source of ambiguity, in light of the underlined phrase in the sentence that follows it.[10]

Because neither the PRAP nor the SPD can reasonably be interpreted as promising Plaintiff that she would be retirement eligible earlier than age 55, Defendants are entitled to summary judgment on the recovery of benefits claim.

## IV.   Declaratory Judgment

Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that she was retirement eligible as of May 31, 2003 -- the last day of her employment with Pfizer -- and that she is entitled to exercise her stock options.  As explained above, (1) Pfizer's plan documents unambiguously state that Plaintiff was not eligible for retirement on that date, and (2) Pfizer's Stock and Incentive Plan states that employees ineligible for retirement may not retain their options upon leaving the company.  Defendants are therefore entitled to summary judgment on this claim.

---

or early retirement.

[10] Plaintiff's claim that the SPD is ambiguous is further undercut by the disclaimer on the first page: "Although this booklet contains information about the Pfizer Retirement Annuity Plan, it is not intended to provide every detail.  Complete details are included in the Plan documents.  In all cases, your benefits at Pfizer are subject to the terms and conditions of these various documents."  (SPD 2.)

**V.     Failure to Disclose Plan Documents**

Plaintiff alleges that Pfizer ignored her lawyers' requests for plan documents and other information, in violation of 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1133, and she requests damages of $100 per day, as permitted by 29 U.S.C. § 1132(c)(1). Defendants are entitled to summary judgment on this claim.

In determining whether to award penalties for failure to disclose plan documents or other information, district courts have considered "various factors, including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." Devlin v. Empire, 274 F.3d at 90 (internal quotation marks omitted).  Plaintiff has not provided any evidence with respect to any of these factors; she has not even specified which documents were allegedly withheld.  Because there is no evidence that Defendants failed to disclose plan documents, summary judgment is granted.  See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (noting appropriateness of summary judgment where plaintiff has presented no evidence).

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment (docket number 55) is DENIED with respect to the breach

19

of fiduciary duty claim and GRANTED with respect to all other claims.  The parties shall submit a joint pretrial order by June 22, 2007 that provides for the case to be ready for trial no later than July 9, 2007.

       SO ORDERED.

Dated:    New York, New York
           June 1, 2007

                                         Kimba M. Wood
                                  United States District Judge